**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| AMINA RICCA,<br>Plaintiff,<br>v.<br>SKYWEST AIRLINES, INC.,<br>Defendant. | Civil Action No.<br>1:24-cv-04042-SDG |

**OPINION AND ORDER**

This case is before the Court on the Non-Final Report and Recommendation (R&R) of United States Magistrate Judge Regina D. Cannon [ECF 71], which recommends that Defendant SkyWest Airlines, Inc.'s motion for summary judgment [ECF 50] be granted as to Plaintiff Amina Ricca's claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) but denied as to Ricca's ADA failure-to-accommodate claim. Both parties filed objections [ECFs 75, 76]. After careful consideration, Ricca's objections are **SUSTAINED**, and SkyWest's objections are **OVERRULED**. The R&R is **ADOPTED in part**. Because there remain genuine disputes of material fact as to Ricca's ADA claims, SkyWest's motion for summary judgment is **DENIED**.

## I. BACKGROUND

The factual and procedural background of this case are fully set out in the R&R, which undersigned will summarize here.[1] Ricca was hired by SkyWest as a Corporate Technical Publications Specialist in July 2022, and her duties involved creating, editing, and reviewing documents in HTML; publishing them to SkyWest's corporate website; removing and fixing links; correcting and updating documents; and proofreading. Ricca's position was fully remote, and she began in a six-month probationary period. During her employment with SkyWest, Ricca also attended a full-time virtual law school program.

Previously, in February 2022, Ricca was diagnosed with amblyopia, a condition that involves an internal failure of the visual system wherein the neural connections between the eye and the brain that are responsible for processing images malfunction, causing blurriness. Ricca's condition causes her to lose track of what she is reading and inadvertently skip words or lines, which requires her to repeatedly check herself while reading. Ricca's vision worsens with increased reading or screen time. Ricca's ophthalmologist filled out an accommodation form for her law school program requesting that she be provided with screen-reading software to mitigate the effects of her condition.

---

1 ECF 71, at 2–12.

After she was hired at SkyWest in July 2022, Ricca informed her supervisor, Lesayah Hinojosa, about her amblyopia. Ricca told Hinojosa that a screen-reading software called ClaroRead would help with her eye issues. On August 5, Hinojosa submitted a request to SkyWest's IT department to inquire about the software. The parties dispute whether Ricca's company-issued laptop had built-in screen-reading software. While the request was pending, Ricca told Hinojosa that she was experiencing eye pain and that her condition was negatively impacting her job performance, and she needed the software to improve. Hinojosa responded that SkyWest would not be able to pay for the software and accused Ricca of "making an excuse instead of accepting responsibility."

In October 2022, Ricca contacted SkyWest's IT department directly to follow up on the software request. On October 26, Ricca escalated the request to Jeremy Barclay, SkyWest's Managing Director of Safety. A few days later, Barclay told Ricca that SkyWest's Safety Department would need to research the ClaroRead software, as it was not a standard company software. Ricca responded that she could still do her job without the software.

In early November, Ricca submitted an official accommodation request form requesting assistive read-aloud software and permission to take small breaks to reduce the effects of eye fatigue from excess screen time, along with a note from

her ophthalmologist. SkyWest purchased the requested software in late November and installed it on Ricca's computer on December 1.

Meanwhile, Ricca was receiving negative reviews of her job performance. On October 28, Ricca received a "Letter of Instruction," a part of SkyWest's formal disciplinary process meant to notify employees of performance issues. The October letter stated that Ricca failed to complete an assignment and struggled with accuracy when incorporating edits and following instructions, leading to delays. The letter also stated that Ricca did not accept feedback well, stating in particular that Ricca responded to feedback "with the struggles she [was] facing rather than accepting responsibility." Based on these noted performance issues, SkyWest extended Ricca's probationary period beyond the typical six months. Ricca disputed the findings of the October letter to Hinojosa and Barclay.

Ricca received similarly negative feedback at her three-month performance review on November 8. The same day, Ricca reported Hinojosa to SkyWest Employee Relations for discriminatory conduct. While SkyWest contends that Ricca's November complaint was investigated, it is unclear whether an outcome was reached.

On December 22, Ricca submitted an internal complaint alleging that Hinojosa made discriminatory comments towards her, treated her differently from other employees, and subjected her to harassment and a hostile work

environment. However, Ricca did not respond to attempts by SkyWest Employee Relations to discuss her allegations.

At Ricca's next performance evaluation, on January 31, 2023, she was noted as improving in her accuracy but faulted for communicating negatively about Hinojosa to other members of her team. Ricca was then placed on paid administrative leave for two weeks. On February 7, Ricca's attorney filed a charge with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation and informed Barclay and SkyWest Employee Relations about the charge.

On February 15, Ricca and Hinojosa signed an agreement extending Ricca's probationary period another six months, with Ricca and Hinojosa agreeing to meet weekly to improve Ricca's performance. Ricca's nine-month performance review on April 24—the first full review period after Ricca received the ClaroRead software—showed her meeting performance standards.

However, on July 7, Ricca received a second letter of instruction, noting several performance and communication issues. The July letter found that Ricca's speed and accuracy fell below a sampling of her peers, though Ricca contends the comparison did not account for the complexity of her work. Ricca amended her EEOC charge on July 13 and July 26 to add allegations of additional retaliation, of which Barclay and others were informed. Ricca was terminated on August 2.

Ricca filed suit against SkyWest in September 2024, bringing three counts under the ADA: (I) disability discrimination; (II) failure to accommodate; and (III) retaliation. After the close of discovery, SkyWest moved for summary judgment. The R&R recommends that SkyWest's motion be granted as to Counts I and III but denied as to Count II. Ricca and SkyWest both filed objections.

## II. APPLICABLE LEGAL STANDARD

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

Absent objection, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no clear error on the face of the record. Fed. R. Civ. P. 72(b). The district court has broad discretion in reviewing a magistrate judge's report and recommendation. In addressing objections, it may consider an argument that was never presented to the magistrate

judge, and it may also decline to consider a party's argument that was not first presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009). Further, "[f]rivolous, conclusive, or general objections need not be considered by the district court." *Schultz*, 565 F.3d at 1361 (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

## III. DISCUSSION

The R&R recommends that summary judgment be granted as to Ricca's disability discrimination and retaliation claims because Ricca did not present sufficient evidence that she was terminated because of her disability or in retaliation thereof. However, the R&R recommends denying summary judgment as to her failure-to-accommodate claim, reasoning that a jury could find that SkyWest failed to reasonably accommodate Ricca's condition by taking approximately four months to fulfill her request for an accommodation without providing an adequate alternative or meaningful explanation for the delay. Because undersigned concludes that there are genuine disputes of material fact as to each claim, Ricca's objections are sustained and SkyWest's objections are overruled. The R&R is adopted in part, and SkyWest's motion for summary judgment is denied.

### A. Disability Discrimination

To survive summary judgment on her disability discrimination claim in Count I, Ricca must show: "(1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her 'on the basis of disability.'" *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024). Undersigned agrees with the R&R's conclusion that Ricca presented sufficient evidence that she has a disability and was a qualified individual under the ADA.[2]

As to the third prong, the ADA requires but-for causation, such that Ricca must show that "an adverse employment action would not have occurred but for [her] disability." *Id.* at 1192. To do so, Ricca may present a so-called "convincing mosaic of circumstantial evidence." *Id.* at 1197 (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)). Stated plainly, "[a] 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023); *see also Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) ("The

---

[2] SkyWest objects that the R&R improperly shifted to it the burden of proving that Ricca was not qualified to perform her job. However, the R&R can be construed to conclude that Ricca presented sufficient evidence that she was qualified for her role as defined by her own evidence, and SkyWest did not establish as a matter of law that Ricca's role had essential functions that Ricca could not perform. This objection is overruled.

'convincing mosaic' analysis . . . is a stand-in for the Rule 56 summary judgment standard applied to employment discrimination."). To satisfy this element, Ricca may "present[ ] a wide range of circumstantial evidence," including "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Ismael*, 161 F.4th at 760.

Here, Ricca presented evidence that, after she discussed her disability with Hinojosa in the context of her poor job performance, and while her accommodation request was still pending, Hinojosa accused her of "making an excuse instead of accepting responsibility" for her performance. Hinojosa then made a similar comment in the October letter, writing that Ricca responded to feedback "with the struggles she [was] facing rather than accepting responsibility." A reasonable jury could infer from these statements that Hinojosa dismissively viewed Ricca's disability as an "excuse" rather than a physical limitation to be accommodated. The R&R agrees but concludes that Hinojosa's statements were not sufficiently probative of discriminatory intent, as Ricca was not terminated for more than eight months.

On this point, undersigned disagrees with the R&R. The aforementioned comments, viewed in the light most favorable to Ricca, permit the inference that

Hinojosa gave Ricca negative feedback on account of Ricca's disability, which negative feedback was used in part to begin a disciplinary process that extended Ricca's probationary period and culminated with her termination. The R&R appears to suggest that the inference of Hinojosa's discriminatory intent dissipated over the next eight months. While that is one reasonable interpretation of the facts, given documented issues with Ricca's performance even after receiving her requested accommodation, undersigned concludes that whether Hinojosa's comments evidence a discriminatory intent, and whether any discriminatory intent persisted such that Ricca was terminated on the basis of her disability, are questions of fact that must be resolved by a jury. *Compare Akridge*, 93 F.4th at 1198 (one or two company-wide statements about rising healthcare costs made within two years of the plaintiff's termination were "too far removed . . . in time and scope for a jury to infer discriminatory intent," especially "given the absence of any comments, ambiguous or otherwise, to [plaintiff] or others about her healthcare costs"). Accordingly, undersigned declines to adopt the R&R's recommendation that summary judgment be granted as to Count I.

**B. Failure to Accommodate**

As to Count II, the R&R concludes that a genuine dispute exists as to whether the four-month delay between Ricca's request for an accommodation and her receipt thereof was unreasonable under the ADA. "In assessing claims of

unreasonable delay, courts consider 'the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith.'" *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 162 F.4th 1296, 1307 (11th Cir. 2025) (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262–63 (10th Cir. 2001)). SkyWest objects that the four-month delay was reasonable as a matter of law, considering evidence that Ricca continued performing her job; SkyWest needed to research and purchase the requested software; Ricca already had access to a different screen-reader software; and Ricca could have taken breaks at her leisure because she was a remote employee.

However, there is also evidence that Ricca was disciplined for her job performance, including having her probationary period extended, while her accommodation request was pending; SkyWest did essentially nothing to research Ricca's request for three of the four months the request was pending; and there is a factual dispute as to whether Ricca's company-issued laptop had built-in screen-reading capabilities. Additionally, undersigned cannot conclude as a matter of law that Ricca's ability as a remote employee to take periodic breaks was a reasonable alternative accommodation to screen-reading software, particularly considering that the October letter reprimanded Ricca in part for delays in completing her

work. Accordingly, undersigned adopts the R&R's recommendation that summary judgment be denied as to Count II.

**C. Retaliation**

To make out a *prima facie* case of retaliation under the ADA, Ricca must show that "(1) she participated in conduct that the statute protects; (2) she suffered an adverse employment action; and (3) the protected conduct and the adverse employment action are causally related." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).[3] Undersigned agrees with the R&R's (at least implicit) conclusion that Ricca's disclosure of her condition, request for an accommodation, and complaints about discrimination and retaliation may constitute protected activity. The latter two elements of her claim merit closer consideration.

In the retaliation context, "mistreatment based on retaliation for protected conduct . . . is actionable whether or not the mistreatment rises to the level of a tangible employment action, but only if the mistreatment 'well might have dissuaded a reasonable worker from'" engaging in protected conduct. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The Eleventh Circuit has recognized that the *Burlington Northern* standard for retaliation claims "protects

[3] Retaliation claims under the ADA are evaluated under the same framework used for Title VII retaliation claims. *Todd*, 998 F.3d at 1219.

employees more broadly—and is more easily satisfied—than the standard applicable to claims of discrimination." *Monaghan*, 955 F.3d at 861 (citing *Burlington Northern*, 548 U.S. at 67). Of particular relevance here, a "materially adverse action" may take "the form of [an] unfavorable performance review [the plaintiff] received (that affected her eligibility for a merit pay increase) after she complained of [ ] discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). Thus, Ricca's disciplinary letters and negative performance reviews may constitute adverse employment actions, as a reasonable jury could conclude that they contributed to the extensions of her probationary period and ultimately ended with her termination—outcomes that might reasonably dissuade an employee from disclosing a disability, requesting an accommodation, or complaining about discrimination or retaliation.

As to the third element, the convincing mosaic framework is relevant. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023) ("[A]n employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent. Some of our precedents refer to this evidentiary approach as the 'convincing-mosaic framework.'"). Again, the convincing mosaic framework is just "a stand-in for the Rule 56 summary judgment standard applied to employment [retaliation]." *Ismael*, 161 F.4th at 760.

The evidence as to Hinojosa's discriminatory intent, discussed previously, applies with potentially even more force in the retaliation context. There is evidence that, after Ricca disclosed that her disability was affecting her performance, and while her accommodation request remained pending, Hinojosa referred to her disability as an "excuse," a dismissive response that found its way into the October letter. Thus, a reasonable jury could conclude that the October letter was explicitly tied to Ricca's disability disclosure and accommodation request. Therefore, it is up to the jury whether Hinojosa had the requisite retaliatory intent in repeatedly disciplining and ultimately terminating Ricca. Accordingly, undersigned declines to adopt the R&R's recommendation that summary judgment be granted as to Count III.

## IV. CONCLUSION

Ricca's objections [ECF 75] are **SUSTAINED**, and SkyWest's objections [ECF 76] are **OVERRULED**. The R&R [ECF 71] is **ADOPTED in part**. SkyWest's motion for summary judgment [ECF 50] is **DENIED**. The parties are **DIRECTED** to submit a joint proposed consolidated pretrial order within 30 days of this Order.

The parties are further **ADVISED** to file any necessary Notice of Leave of Absence on the docket within 30 days of this Order, as a pretrial conference and trial will be scheduled thereafter without further notice. Counsel may include on this Notice any dates that conflict not only for themselves, but also for their clients

or designated client representatives, as well as key witnesses. The Notice should include any conflicting dates from January through August 2027.

Best efforts will be made to avoid conflicting dates, but given competing scheduling demands, this cannot be guaranteed. For this reason, counsel are encouraged to only include dates in the Notice that are truly in need of protection.

The Clerk is **DIRECTED** to submit this Order to undersigned after 30 days.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge